Good morning your honors. Mike Brestan, representing Jerome Pitts. I want to thank you for inviting us out to San Francisco. I have four issues. I'll move as quickly as I can through these issues until you have questions. The first issue is the district court erred in denying the defendant's motion to suppress. I think the parties have laid out very nicely all of the standards, standard of review, being de novo and the other standards that the courts look at to determine whether the police had reasonable suspicion under these kinds of circumstances. I'd just like to go over real quickly the reasons why I believe the evidence did not support that. The police had, in my opinion, the police had nothing more than a hunch or a collective hunch that some sort of criminal activity was afoot at the townhouse location. None of the officers saw contraband or cash changing hands, including those people in Pitts' vehicle. There was no evidence that Pitts or the others in his car were known drug users or dealers, no specific evidence. There was no evidence that the white male who was stopped a ways away from this area and who had cocaine obtained it from Mr. Pitts or anybody else who was actually in his car. Apparently, Pitts or somebody that was dressed like him was the only one in that car that was specifically seen engaging in one or more of these hand-to-hand transactions, at least according to Officer Nolan. Is it your position that the hand-to-hand transactions that are observed by the policemen who are surveilling what has been described as a known drug alley is not reasonable suspicion for purposes of a detention and investigatory stop? The best way I can answer that, Your Honor, is to say the word transaction is not my choice of words. It's a word used by Officer Nolan. I would liken what he saw as being anything from a handshake to the passing of some non-contraband item like a cigarette lighter or a cigarette. It might have been a handshake, but, again, that was a term used by Officer Nolan. And when questioned closely about what he actually saw, he did acknowledge that he didn't see anything actually changing hands, money, contraband or anything like that. And so I would – I think my characterization is just as accurate as his, if not more accurate under the circumstances. So they just happened to be in an alley shaking hands with each other? Well, I can't say what they were doing, but I understand your point. A meeting of the Friends Society. Pardon me? A meeting of the Friends Society. Well, it was a very busy area. There were lots of men and women in that area, no doubt mingling. Some of them may have been up to no good or may have been involved in some sort of drug activity. But when focusing specifically on the people who were in that car that was stopped, and you simply isolate those four people, there's very thin evidence that they were, in fact, engaged in criminal activity, even if they might have been around others in suspicious circumstances. Well, Nolan testified that he saw your client one and perhaps two hand-to-hand transactions, right? Well, again, saw him exchanging something possibly with at least one person. And that's not enough for reasonable suspicion? Well, I think standing alone is not enough, even if the context itself includes some suspicious activity. I would say there would need to be more than that. Again, because there are so many innocent alternative explanations for a, let's say, a single gesture that looks like hands are coming together under those circumstances. Again, it could have been anything. It could have been a handshake. Do you want to touch on your sentencing issue? Yes. Second issue, district court erred in concluding that the government met its burden of proving that the gun that was allegedly possessed by Pitts was stolen. I've argued that the only reference to that, the only evidence presented, was an unattributed statement in the pre-sentence report. Subsequently, the gun was discovered to have been reported stolen May 2, 1998, in Atlanta, Georgia. There was an objection. It was a multifaceted objection, but it included an objection to the stolen nature of the weapon, and I think that preserves the issue. It is the government's burden, in this particular case, by a preponderance of the evidence, to prove that enhancer. I've argued that that simply was not enough. It resulted in a two-level enhancement, which in turn changed the guideline range. If we were at criminal history 6 from 70 to 87 months, on the one hand, to 84 to 105 months on the other. My next argument is going to talk about whether that criminal history itself was correct. If I'm correct as to the next argument, then the criminal history, I'm sorry, the sentencing range of criminal history 5 would have been changed from 63 to 78 months, on the one hand, to 77 to 96 months on the other. The 63 to 78 months being under the 84 months given by the judge. And I hopefully laid out, as well as I should have, the analysis the court goes, follows in determining whether the sentence is legal. Court first looks to see whether there's some procedural error, and if no procedural error, then whether the sentence is reasonable. Failure to calculate or to incorrectly calculate the guideline range is one of those procedural errors that should, if objected to, should result in review and remand. In fact, I would argue under Rita and under U.S. McCarty, which is a Ninth Circuit case that's been cited, if there's a procedural error and it's objected to, you don't even get to the reasonableness analysis. Arguably, it gets remanded to correct the procedural error. Third issue, district court improperly calculated the defendant's criminal history under the sentencing guidelines thus prejudicing the defendant. This relates or pertains to the prior conviction where the defendant eventually was sentenced to one year in prison with credit for 160 days jail. I'm a practicing attorney and a trial attorney in Arizona, so I have the benefit of that experience. I've cited ARS 13709B, which requires that the sentencing judge credit all pre-sentence incarceration. That would include incarceration during probation toward a prison sentence when somebody is revoked from probation and sent to prison. It is legally impossible for somebody to do more than a year in jail if they get a year in prison. But under those circumstances, the judge would not have imposed a year in jail with 160 days credit for time served. Under those circumstances, the judge would have said time served, one year in prison, time served. In this case, clearly that did not happen. And if one looks at the pre-sentence report and how that's characterized, it looks as though the jail started on 8-1-2-0-5 and probation was revoked on 12-23-0-5. And eventually he's sent to prison and they compute 160 days pre-sentence incarceration. That all is sort of consistent with this 160 days. There would have been some incarceration. Well, that's actually under the 160 days, so it's consistent with the 160 days. There's probably some more jail there somewhere. And even if he had been released early on, it's not called parole in Arizona anymore, supervision, after 85 percent of the sentence was served, if that's applicable in this case, still the total time could not have exceeded one year under Arizona law. So I believe a mistake was made there. I believe there was some double counting. Now, the problem is that the objection was not specifically to that problem. There was an objection. Your point that if he was going to do eight months for marijuana possession as a misdemeanor and he got his probation revoked and had to do another year, you can't add a year to the eight months? No. The sentence is only eight months. The revocation of probation is not part of his sentence. Well, if he's placed on probation, and let's say he's given eight months jail as a term of probation, then he'll serve out that eight months in jail or some large portion of that. And if he's later sent to prison on that same charge, then if he's already done more than a year, it would be odd for the court to impose a year prison sentence, first of all. But if for some reason the court wanted to do that, the court would make it clear that he served his sentence already. He can't be asked to serve more than the one-year prison sentence if that's what's imposed. So in this case, what had to have happened is he served some of that jail as a term of probation. And then his probation was revoked. He was sent to prison for a year. The court, as it's required to, gave him credit for all pre-sentence jail time. And I'm out of time, but ---- You can finish your sentence. So how much did he serve? Well, 160 days. That's all he served. Okay. Shall I? I think that you've used your time. We've helped you. Thank you. Thank you. Good morning. My name is Paul Root. I'm from the District of Arizona, and I represent the United States. The defendant, as he indicated, argued four separate issues on appeal. The first one concerned the denial by the district court of the defendant's motion to suppress the evidence. The district court was presented during the motion hearing with a series of factors to be considered when making a determination as whether or not the officers, when they stopped the defendant's vehicle, had reasonable suspicion. Among the factors pointed out and described to the court were number one is the area in question. It was well known to the Phoenix police as being an area known for gang and drug activity. Officer Nolan, who was observing the alleyway behind this particular complex, indicated he was approximately 30 to 40 feet from various individuals who were milling about in the alleyway. They were engaged in what he described as hand-to-hand transactions. When pressed upon cross-examination, he said he believed that they were hand-to-hand drug transactions, although he was quite open when he indicated, I couldn't see anything passing between the individual's hands, but I did see a series of hand-to-hand transactions involving many of the people in the alleyway. Among those people engaged in at least what he said were two separate transactions was the defendant. He described the defendant was particularly mostly by the clothing he was wearing, and he described the officers who were waiting to come into the area. He described the defendant's vehicle that he was getting into, and he described the fact that three other individuals or companions, as he described them, had gotten into the defendant's vehicle as well. The officers who were on the outside, on the perimeter, if you will, stopped an individual who was seen in the alleyway engaging in a hand-to-hand transaction. They stopped him after he had left the alleyway, and it was determined that he had rock cocaine in his hand or in his pocket or somewhere in his possession. And last but not least was that the surveillance started at approximately 11 or 11.15 in the evening and went on for some period of time. Those were the factors presented to the district court, which allowed the district court to come to the conclusion that under the circumstances, the totality of the circumstances had set out in such cases as Arvizu that it was reasonable for the officers to assume that there was criminal activity afoot and their stopping of the defendant's vehicle was appropriate under all of the circumstances. Another issue raised by the defendant involves the two-level guideline enhancement for the stolen gun. The stolen gun was mentioned at one time and one time only, and that is in paragraph six of the draft pre-sentence report and of the report, the final report submitted by probation. Probation indicated that their investigation apparently revealed that the weapon, which was ultimately determined to be possessed by the defendant, had in fact been stolen on a previous occasion in 1998 in the state of Georgia. There was no ---- But your primary position seems to be that that objection wasn't really even made by the defendant. That is certainly one of our positions because of the nature of the objection. Well, the first sentence of his objection says, Mr. Pitts disputes the stolen nature of the weapon, period. Isn't that an objection? Yes, it is, Your Honor. He goes on to indicate that he had no knowledge. So if he made the objection, then you can't rely only on the allegation in the pre-sentence report, can you? Isn't that what I'm saying? That's the only evidence that was presented to the defense. That's not evidence. I mean, once an objection is made, isn't our case law clear that that's not sufficient to support an enhancement? The response that I filed was focused on the issue of knowledge. I know. You didn't respond at all. Well, you have any evidence besides the pre-sentence report as to the stolen nature of the weapon? No, Your Honor. So there is no ---- there is nothing beyond the pre-sentence report. That is correct. You agree, if an objection is properly made, that the pre-sentence report alone is not sufficient to support an enhancement? On its face, unless the Court determines that that evidence presented by probation is sufficient to meet the government's burden. Well, wait a minute. You're saying the Court can determine that a statement in the pre-sentence report is sufficient evidence in the face of an objection from the defendant? That is what I'm saying. Can you cite a case for that proposition? I do not, Your Honor. So what is that, new law? No, sir, it is not new law. But you can cite a case for it? No, I do not cite a case for that. All right. The third objection deals with the three points assessed towards criminal history based upon the marijuana conviction. Again, the pre-sentence report in paragraph 52 detailed the history of the marijuana conviction. That being that that was a felony conviction and the defendant, based upon the records reviewed by probation, had done a sufficient amount of time to trigger the three points under the criminal history category. The defendant objected on the sole basis that it was what he referred to and his counsel referred to as the Proposition 200 case,  Defense counsel was very candid with the court when she indicated that she had reviewed the records submitted by the probation department, and she had found nothing that indicated, number one, that the case or the conviction was a Proposition 200, and her own research had not allowed her to come across any documentation which refuted what probation had indicated. Based upon those facts, the district court found that the three levels added to the criminal history was appropriate. Well, pardon me, counsel. You mentioned this being a felony marijuana conviction in Arizona. I did, Your Honor. I thought that he was given an eight-month sentence. He could have been given an eight-month sentence even though it was a felony, Your Honor. But my understanding is that it was a 2005 marijuana felony conviction. Well, if he had served the whole eight months instead of being allowed out on probation and being revoked, he wouldn't be subject to a three-point enhancement because he would have served only eight months, not 13, correct? Based upon the dialogue between the trial court, I mean, the district court and the probation officer, the probation officer indicated that he had done approximately 13 months. He referenced the eight months and he referenced additional time that had been given after the full revocation had been instituted. I guess I didn't make myself clear. Had he not acceded to probation, had he insisted on serving his time in jail and done the whole eight months, he would not have gotten a three-level enhancement, correct? That is correct, Your Honor. So by acceding to probation, later to be violated and revoked, and a sentence imposed of a year for doing that, what he did was take himself out of the one category and put himself in another category and make himself vulnerable to a three-level enhancement. That appears very likely, yes, sir. The last point raised by the Defendant involves the consideration of Title 18, United States Code, Section 3553, sentencing factors when determining the sentence. It is the government's position that, number one, the court clearly reviewed the pre-sentence report here. The pre-sentence report listed several 3553 factors in making its recommendation for a sentence of 120 months. So the court was well aware of those factors having been taken into consideration by probation in making its recommendation. And it can be assumed that the district court, in fact, also did the 3553 analysis, whether or not he articulated it. The judge also indicated that with his ruling on the objections concerning the stolen gun and his objection or the objection made at sentencing to the three-level enhancement, that the judge did, in fact, do a guideline calculation and determined and arrived at what was an appropriate guideline sentence. When he took into consideration all of the factors, it is clear that the judge determined that an 84-sentence, 84-month sentence was an appropriate sentence, and that sentence happened to fall within the guidelines. Thank you. Thank you. Does anyone have any questions that need to be developed?  Thank you. Thank you, Mr. Kline. Thank you.
judges: Schroeder, Tashima, Bea